Where would you like to go first case? Case number 13-2073, Raper & Kramer v. Napoleon. Could I please have counsel for each side approach the podium so I can have everyone identified? All right. Who represents the appellant? Good morning, Your Honor. My name is Samford Kahn. I'm an attorney with LAF, and I represent the defendant, Appellant Nicole King. Thank you. My name is Samford Kahn. I'm of Samford Kahn Limited, and we're the attorneys for the plaintiff, Raper & Kramer, Agents for Island Care. All right. Thank you very much. Mr. Wood, do you want to reserve some time for rebuttal? We'll have 15 minutes for each side. I would like to reserve 2 minutes, Your Honor. Very well. All right. Mr. Kahn, if you have a seat, we'll get started. Thank you. Thank you very much. Anytime you're ready, counsel. Thank you. Nicole King was facing eviction from subsidized housing for nonpayment of rent that she did not even owe. So she had a defense to the eviction action, but not wanting to risk her housing, she signed what she reasonably believed, based on prior conversations with her property manager, was a pay and stay agreement. Only when she tried to pay did she learn that the order that she had signed was actually a pay and move agreement that awarded plaintiff everything it was seeking. Didn't the order say that it was an agreed order? It did state that it was an agreed order, Your Honor. But do you know any case law that says that you can vacate an agreed order? Yes, Your Honor. In Illinois, the case law is that you can vacate an agreed order to prevent injustice. And Ms. King has satisfied that standard. Well, aren't those cases where there's fraud? The standard for vacating an agreed order has evolved over the past 50 years, Your Honor. It used to be that you could only vacate an agreed order for fraud, duress, coercion, gross disparity in the party's bargaining positions or capacity, and we actually have that here. But over the past half century, the standard has evolved to the point where now motions to vacate agreed orders are judged under the same standards that apply to 214.01 motions, and that means that they invoke the equitable powers of the trial court and they should be granted to prevent injustice. Now, in this case, Ms. King learned after signing the order that it awarded plaintiff not only all the rent demanded plus court costs, but also possession of her apartment. So at that point, she got an attorney and she moved to vacate the agreed order based on her assertion that she had misunderstood the order's material terms. The trial court accepted this assertion. Nevertheless, it denied her motion to vacate on the grounds that she had violated her lease agreement by playing loud music and by allowing into her building a person who had been previously barred. These allegations were raised for the first time at the hearing on Ms. King's motion to vacate. The trial court's decision to deny her motion to vacate... Counsel, at that time, was she represented by counsel, though? She was represented by counsel after she signed the order. When she went to court on the return of the... At the time when they had the hearing on the motion to vacate, was she represented by counsel? Yes, she was. Okay. The trial court's decision to deny her motion warrants reversal for two reasons. First, by relying on allegations that had been raised for the first time at the hearing on the motion to vacate, the trial court deprived Ms. King of due process, violated her rights under the rules and regulations governing her subsidized tenancy, and committed reversible error. Second, Ms. King satisfied the standard for vacating agreed orders. Now, with respect to the trial court's legal error, the trial court explicitly stated that it would have granted Ms. King's motion to vacate, but for the allegations that were raised for the first time at the hearing on her motion, the allegations regarding the loud music and her cousin. Counsel, I have a question. Was there ever a request for a continuance at that point in time when the trial court proceeded to hear other matters other than the motion to vacate? There was not, Your Honor. But, Your Honor, I don't think that would have mattered because it was entirely inappropriate to consider matters that were not set forth in the termination notice upon which the underlying enforceable action was based, and that's because of the rules and regulations governing Ms. King's tenancy. All right, but are you alleging that counsel wasn't prepared to proceed on the other arguments other than the motion to vacate? Yes. Okay, so at that point in time, did counsel ask for a continuance in order to prepare for those matters? Toward the end of the hearing on the motion to vacate, there was a request for time to respond to some of those allegations, but that's after there had already been testimony on these allegations, and that was inappropriate because these allegations had been sprung on Ms. King at the hearing on the motion, and they had nothing to do with her motion to vacate. She was facing eviction for nonpayment of rent, and she was arguing that the agreed order should be vacated because she did not understand that the order that she had signed was not a pay and stay agreement. Those were the only relevant issues in the case. Whether she did or did not, or reasonably did or did not, understand the terms of the agreed order that she signed. The trial court's decision to rely on these new allegations violated due process, and they also violated the rules and regulations governing Ms. King's subsidized tenancy. These regulations could not be cleared. They state that if plaintiff wants to evict a tenant, then plaintiff must first issue a written termination notice, and it must set forth in this termination notice every allegation upon which it will rely at trial. Furthermore, plaintiff is restricted to relying at trial on the allegations in this notice. When plaintiff raised new allegations, Ms. King was taken completely by surprise. She had no advance notice of these allegations, and therefore no opportunity to present a defense to these allegations. Ms. King did object to these allegations at the hearing on her motion to vacate, and in its response brief, plaintiff even concedes that these new allegations were not relevant to Ms. King's motion. Nevertheless, plaintiff contends that the appellate court may uphold the trial court's decision on any grounds that appear in the record, but no such grounds exist, and this is why. Ms. King satisfied the standard for vacating the agreed order. As I stated previously, motions to vacate agreed orders should be granted to prevent injustice, and Ms. King satisfied this standard for three reasons. First, there was no meeting of the minds, therefore the agreed order was not an enforceable contract. Second, Ms. King had at least two meritorious defenses to the underlying eviction action, so granting the motion to vacate would not have been a useless act that merely delayed an inevitable eviction. Third, the agreed order was both procedurally and substantively unconscionable. Now, with respect to the first factor, meeting of the minds, an agreed order is a contract, it's governed by the laws of contracts, and it is axiomatic that a contract is not enforceable unless it reflects a meeting of the minds. The agreed order in this case did not reflect Ms. King's reasonable understanding of her agreement with plaintiff. She thought that she was signing a pay and stay order, and that was a reasonable belief based on previous conversations that she had had with her property manager. When she got the termination notice in this case, demanding less than $200 in rent, she went to her property manager, she disputed the fact that she owed this rent, but the property manager told her, you can stay if you pay the rent demanded plus our court costs. Ms. King set forth in the affidavit attached to her motion to vacate her sworn assertion that she did not understand that the agreement she signed was a pay and move agreement. Plaintiff did not submit any counter affidavits. Nothing that was stated at the hearing on the motion to vacate contradicts Ms. King's assertion, and most important, the trial court accepted this assertion. Initially, the trial court said that Ms. King's assertion was essentially irrelevant. I'm quoting from the record now. The trial court said, you know, in virtually 90% of cases where there's an agreement, one side is generally an attorney and one side is pro se, and it's very often that somebody doesn't understand it, but we generally enforce them. The trial court then said that it would have made an exception in this case and granted Ms. King's motion to vacate, but for the unrelated and unsupported allegations that were raised at the hearing on the motion to vacate. With respect to the second factor, Ms. King's meritorious defenses, she has two. The first offense, which she raised at the hearing on her motion to vacate, is that she did not owe any rent when the plaintiff served her with the termination notice demanding a little less than $200, and this is the reason why. Because Ms. King's tenancy is subsidized, she pays a reduced rent equal to a percentage of her income. The rent that was demanded in the termination notice reflected rent that accrued after Ms. King lost all of her income, and Ms. King testified that she provided her property manager with timely written verification of the fact that she had lost all of her income. As even the property manager acknowledges, had they received the notice, her rent should have been reduced. She had no income. Her rent should have been reduced to zero. Her second offense is that the notice was not served in accordance with the mandatory methods of service set forth in the federal regulations governing her tenancy. With respect to the third factor, unconscionability, when determining whether to grant a motion to vacate, courts consider whether the order that the movement wants to vacate is procedurally and or substantively unconscionable. In this case, the order was both. The order was procedurally unconscionable because the circumstances surrounding its entry demonstrate that Ms. King did not have a meaningful opportunity to demonstrate that an agreed order should be vacated, but they are necessary to demonstrating that. The third factor is that, as I've stated before, Ms. King reasonably believed that she was signing a pay and stay agreement. The   fourth factor is that Ms. King signed this agreement while standing before the bench and therefore did not have an opportunity to read it. Fifth, even if she had an opportunity to read this order, it is unlikely that she would have understood its terms because it was a form order that was full of legal terminology that a layperson would not likely understand. Sixth, did the judge determine whether or not she understood the terms of the order? No, the judge did not. And if the judge had done that, she would not have a basis for vacating the agreed order. But all the judge did was say to plaintiff's counsel, is there an agreement? Well, how did they derive to the fact that it was agreed? I mean, there must have been some type of conversation or some type of understanding for the court of the agreed order that the order has the word agreed on it, that Ms. King signed the order. And did she know that it was an agreed order? Yes. So how did they derive to the understanding that it was going to be an agreed order? Ms. King came to court and based on her conversations with her property manager believed that she had a pay and stay agreement. She met with plaintiff's attorney and the attorney said to her, have you worked this out with the property manager? And she said yes. At this point, what the plaintiff's attorney is thinking and what Ms. King is thinking are two different things. Basically, you think that they both were under the impression that there was an agreement. It's just each had an impression of a different agreement. That's exactly right. All right. Let me ask you this. We just want to take a step back. This is a 2-1301 motion, isn't it? That's correct. Okay. I want to make sure I understand your position. Should we be deciding this based on the law that's been developed with regard to 213-01 or should we be looking to 214-01 because it's an agreed order? Well, as the owner... I want to make sure that, because you said something with regard to that earlier. That's correct, Your Honor. As I say, the standard for vacating an agreed order has evolved over the past 50 years. And in a 2009 case called In Re Marriage of Rolseth, the Illinois Appellate Court did a very good job of summarizing the evolution of the standard. And what the court stated is that now the standard is identical to the one that governs 214-01 motions. Therefore, the movement must show that vacating the agreed order is necessary to prevent injustice. The movement must also establish that she has meritorious defenses to the underlying actions so that vacating the agreed order will not be a useless act that merely delays the inevitable. So you would agree then that because we're dealing with an agreed order, at least a purportedly agreed order, that the standard that we should be applying is somewhat higher than ordinarily would be applied in a 213-01 situation? Yes. Because 213-01 petitions are routinely granted? That's correct. All right. Go ahead. With respect to the order's substantive unconscionability, it is substantively unconscionable because it is wholly one-sided. Plaintiff did not compromise its claims at all. Plaintiff obtained everything that it could have obtained had it gone to trial and won. It got all the rent it was demanding, plus court costs, plus possession of the only decent housing that Ms. King can afford. Ms. King, in return, gave up her housing, and she did this when she had meritorious defenses to the eviction action. Ms. King stated in her testimony at David and at the hearing on the motion that she never would have entered this order had she understood that it gave plaintiff the right to evict her. She disputed the amount of rent demanded in the termination notice. And the only reason she agreed to pay that, plus court costs, is because she didn't want to roll the dice by going to trial and presenting her defenses. She wanted the sure thing. And she believed that plaintiff was giving her that sure thing. Plaintiff was assuring her that if she paid the disputed amounts, plaintiff would allow her to preserve her tenancy. That was her understanding. And the trial court accepted that assertion. The trial court at no point challenged her credibility on that issue. In this case, Ms. King is not seeking a dismissal of the forcible action. She is not seeking a judgment in her favor. She is merely seeking an opportunity to proceed to a trial on the merits and present her meritorious defenses. And, therefore, we respectfully ask that this court reverse the trial court's decision to deny Ms. King's motion to vacate the agreed order. Thank you. Good morning again. The history of this case is that the landlord gave the tenant a five-day notice for nonpayment of January, February, and March rent on March 9th of 2013. Now, I might get a little out of order because it is kind of odd. When she gave her the five-day notice, and this comes up and is in the when they, I'm getting ahead that they made a motion to vacate and the judge involved, which was Judge Maltz, had a hearing and that came out. At the initial, so I'll follow in order. Okay. The case was filed on April 3rd. The court date was April 18th. On that date, when the defendant appeared in court, she met one of the lawyers, who happened to be Eileen Kahn, and they met outside. And on the file, it was indicated that there were no deals to be made. And when Ms. Kahn spoke, and this comes up, you'll see there's only one transcript. There was never a transcript or a bystander report on the initial case, but on the motion to vacate, there was a transcript. And this is set forth there in the Anyway, she told her she could not, this was a no deals, and that she had a right, and this was admitted, that she had a right to continue the case and get a lawyer. The defendant did not decline, and they had an agreement giving her until sometime in May to move. They stepped up before the judge, and Ms. Kahn, the judge addressed, and the judge in these cases always addresses the tenant to say, do you understand what this is? This is what it means. And the record, the record Is there any record of that? Pardon? Is there any record of that? The only record, there's no bystander, there's no transcript. If you look, there is an exhibit, I believe, that shows the judge's notes, and the judge's notes said, possession such and such a date, and money. No other about, that the judge said, this order means this, and do you understand that? There's no record of that. Is there? Just the order that was written down. There's no oral transcript, nor a bystander report. No. So, why should we consider what you just said? I'm just telling you what happened, for better or worse. Well, I'll ask him what happened then. I'll ask him what happened. I mean, it's not in the record, right? It's not in the record. Thank you. Go on. And at that time, the defendant wanted more time, and the order was changed from one date to another date, that another date being May 15th of 13, rather than an earlier date to leave, and a judgment for the rent of $198 was entered. And there's no allegation, there's no allegation that the judge said, yes, you can pay in state. There's no allegation of that from the defendant. The time was up on May 15th, and on two days later on, I believe it was May 17th, a motion to vacate was followed. The defendant, the attorneys, appeared in court on that date, and a motion was made to vacate the judgment. Initially, and this is the only transcript we have, initially Judge Maltz said, ordinarily, if we have an agreement, we accept it. The defendant did sign the agreed order before the judge when it was entered, and the judge says, generally, if there's an agreed order, we accept it. And then the judge said, but I want to, in fact, he said, I want to do more, I want to get into the background of it. And he got into the background where the defendant said that I had talked to the manager and she said if I paid the rent, I could stay. Now, the manager testified that she did, and that's where I was getting ahead of myself, but I'm not ahead of myself anymore, I am now. The manager said when she gave her the notice on March 9th, if you pay before I send it to the attorney, I will take your money. That was on March 9th. Apparently, well, she didn't offer the money, and it was sent to the attorney about April 1st, and it was filed on April 3rd. So when it was filed, the manager gave the instruction, I don't want the money, I want her to move, it's what happened. And so when we got to court, there was no more offer to take the money if she offered it. And with regard to the original order, we would state that the original order, unless there was abuse of discretion or fraud or something of that nature, that it should not be vacated. Well, in exercising his discretion, the trial judge plainly stated, based on everything that I've heard, ordinarily I would vacate this order and set the matter for trial. But because of these other problems that are occurring in the unit, I'm not going to do that. Now, isn't that an abuse of discretion? Since there was no allegations in the complaint, nothing in the notice about the fact that she was being brought to court with regard to problems in the unit, shouldn't he have at least continued the case and given them an opportunity to marshal evidence with regard to that or force them to amend the complaint at least to include those allegations? You couldn't amend the complaint because if you file an action for nonpayment, nonpayment it is. The basis of your lawsuit is your five-day notice and that cannot change. Okay. Well, then, if that's the case, if the basis of the five-day notice is nonpayment of the rent and the judge said, I'm deciding this on circumstances other than nonpayment of rent, isn't that an abuse of discretion? I would say it's a judge doing what a judge might want to do. A judge isn't just a judge. This is a rule, get out of here. This judge will say, I want to give, I want to look and I wanted, he wanted to determine what he said is I want to know why they weren't taking the rent. A lot of us have been doing this for a long time and generally if the people have the rent, you want the rent. And this was a little bit unordinary because the landlord didn't want the rent. So he wanted to know why. In other words, it does happen every now and then that a judge says, I don't care if you don't want the rent. And they kind of shove it down your throat and people take it because that's the real world. We live in a real world. So this judge was going beyond. Maybe he could have said nothing and said tough on you, but he didn't. He wanted to know, he wanted to know why they wouldn't take the rent if there was a decent reason because he was doing more. It's an equitable court too, landlord-tenant court. Okay, so this is what he did. I can't help it, but this is what he did. So he asked about why, if they ever said that they would take it. And they said, yeah, we did at an earlier date, but she didn't pay it in effect for 20 days. And at that time, something's happened and we filed it. And then the judge had a hearing, as you all see, about what was this and what was that. And the woman admitted she said, yeah, sometimes I have loud music late at night. And the judge concluded that wasn't the reason for the eviction. But he was trying to make an exception to an agreed order. And that's what he was looking to do. But then he found, he found something that maybe he shouldn't make an exception. That was his decision. He was trying, I think he said in the transcript, I have a job to do and I'm supposed to do the right job. Maybe he's foolish and doesn't do what he's supposed to do. But he tried to do a good thing. And his conclusion was there are tenants out there, too, and the better thing, aside from the law of vacate or not vacate, is do the right thing for the other 140 people in the building. And that's why he rejected it. That's my reading of it. I wasn't there, but that's my take. But I've been there a long time. And I've had lots of things happen. And sometimes Your answer basically is that the grounds were what the grounds were, but since it's an equitable situation, the judge took these other matters into consideration in determining how to find equity. I think so. I've been there, but I think so. And we've had, I mean, I've been doing well. This happens a lot of times that, you know, they go beyond. And that's just the way it is. And you know what? That's the way it should be sometimes. Well, the problem is, you know, that we're faced with now. I said for three years I heard your cases, probably more than a hundred of them. And I've never seen a lawyer in your office, especially your daughter, take advantage of anybody. Okay? Never. And I can't say that about any other lawyer that ever occurred before me in a rent eviction case. But here, there's no transcript of what happened when this initially occurred as to what this lady was told or what she wasn't told. And under the law, that has to be construed against you. See? Because you're the defendant. That's what the law says. And here's somebody who doesn't have a lawyer. Oh, my God. I mean, it's construed against them. But the fact that this lady did not have a lawyer, you see, and she says, well, I didn't know, that's always a problem. Can I respond? You know, I understand. But this lawyer said to her, and both sides, the woman didn't deny it, this woman said to her, because it was a no deals and because she couldn't make a deal, pay the rent if you pay or say it, if you don't, you don't. She couldn't make that deal. And so she said to her, if you want to get a continuance to get a lawyer, and it's not said by lawyers often, you can. You can because I've got no discretion here. And she didn't. She was looking for time. And when she stepped up before the judge, there was a time on the agreement before it was signed. And then she says, I want more time. So she got what she, when she got before the judge, she made an agreement based upon, in effect, if I get more time, I'll do the agreement. And she got more time. Yeah, but we don't have a reported proceeding of that. That's correct, but we're the plaintiff. And I further say In the FOE, yeah. I further say the judge also had to determine credibility, okay? And we talk about that she put in a paper to reduce her rent. They said one of the conditions she didn't owe because she put in a paper to reduce her rent. She did, but it was two months later. In other words, she said that she dropped something in the box and her rent would go down. If her rent goes down, you tell management at the end of the month, your rent goes down. So she said she put it in the box, okay, and never, apparently she never checked back because they gave her a five-day for three months' rent. She never said that's the wrong amount. And then after this is over, she gave her the note and then the rent would have gone down April 1st for April 1st. And so part of the judge's, I think, determination is, I think, you know, how credible are you? How credible are you? And when you say, I'm sorry, I lost my place. When a pro se tenant comes to court, and it happens all the time, and you say, you know, I'll give you so much time to move, blah, blah, blah, blah. And then you further say you have a right to a continuance, you have a right to get an attorney, and they don't. Then they sign the agreement. They wait. This was on April 18th. Now, she went back and talked to the manager, I assume, and the manager wouldn't take it. And she was stayed until May 15th, and a motion is made on May 17th. I mean, another point. I would have, you would have, most people would have come back three days later and say, wait, wait, wait, I didn't understand. Three days ago when I did that, I thought, that didn't happen. Well, she came back within 30 days, and that's generally kind of a line for us. But let me ask you this. To get away from just the general equities of things, counsel and the appellant take the position that they have a meritorious defense. Now, you were just arguing with regard to that. How much was the rent? When did the notice come in that she lost her income? And when should the rent have gone down? And we can argue back and forth about that. But, you know, we have a general, there's a general theme in the law that says that there's a preference that matters should be disposed on the merits. And counsel concluded his argument today by saying, we're not looking for a winner here. We're just looking for a winner. And so my question is, why shouldn't we just let her have her hearing on the merits and let the judge decide? The jury. I'm sorry, the jury. Very well. Well, even better. Let the jury decide whether she has a defense or not to the eviction. Well. Not sure the jury would hear about the loud music. I think that if that were the case, very commonly when you sign an agreed order that I will do this and you change your mind or things change for you, you come back and say, I don't understand. How are you going to measure who understands and who didn't? How grievous? Did they tell you you could get a continuous? Yeah. Well, that's important. That's world over there. You have an enormous amount of agreed orders. I mean, in landlord-tenant courts, and now they're in the districts as well, I think 90% of the cases are agreed orders. Well, how can you do agreed orders? I'm telling you, we go out there and 90% of the tenants and landlords agree that they're going to move or whatever it is. And if those orders can be vacated because you misunderstood, we're going to get a lot more time and a lot more people because that's the real world. I think that's really the world. These aren't like long chancery cases or law cases that go for seven years and if you have an agreement, you've had an awful long time to think about it. These go very quickly. They go very quickly. And if agreed orders don't have much value, well, I'm old. It won't matter. But it's going to be a mess up. I'm sorry. Before we conclude, do you want to speak to this New Jersey case that was cited, this Harris case, which seems flat on all fours, although it's a New Jersey case? I confess, I didn't study the New Jersey case. I don't know. I don't check California cases. Well, I think it was cited in the briefs. You can correct me if I'm wrong when you get up, Counsel. Community Realty Management v. Harris, a New Jersey Supreme Court case, which seems to be almost the same exact facts. I'll ask Counsel about it. Okay. But I'll tell you something else. It's interesting. We talk about fairness and how everyone should know everything. There was a defendant and I'm not being critical, but defendant filed a brief. Plaintiff responded to the brief. In the reply brief, there's about five new defenses. That sounds familiar. There's five new defenses that we couldn't respond. I'm not asking to respond to, but I'm just saying sometimes in the practical world you do this and then later more comes from it, which may or may not be considered. Because there were like three or four new takes on it that were never in the first one. So there's also kind of a rule, I think, that you're bound by what you do and it's kind of the same and it's true. In the five-day notice case, you're judged by the five-day notice and you go into other things. But I understand that courts regularly and not improperly consider other things because they're trying to do the right thing. And I think in this case, if this case doesn't stand, this case is just not a terrible case of any kind. But you just have the rules of agreed orders and if the rules of agreed orders change, I don't know what's going to happen. Anyway, thank you. Thank you, Mr. Kahn. That's a lot to respond to in two minutes. But I would like to address first of all I'll give you three. Thank you. I would like to address the concern that no bystanders report was provided for the return date. There was no need for it. On the return date, the trial court did not make any factual findings. It did not reach any legal conclusions. It merely stamped the order. To the extent that anything was said by the trial court, it is reflected in the affidavit that Ms. King attached to her motion to vacate. And she stated that the court did not explain the material terms of the order to her. The court just said, do you have an agreement? So the affidavit actually functions like a bystander's report. I would also like to address the contention that we were somehow accusing Eileen Kahn of doing anything improper. We are not accusing Ms. Kahn of making any misrepresentations. What we are saying is that Ms. Kahn did not explain the material terms of the agreed order to Ms. Kahn. Ms. Kahn reasonably believed that the order provided for one thing, judgment for possession plus the rent claimed plus court costs, enforcement of the judgment stayed 30 days. Ms. King reasonably believed the order provided that she could preserve her subsidized tenancy by paying the rent claimed and the court costs within 30 days after the agreed order was entered. If she didn't do that, then a judgment for possession would be Plaintiff's counsel's argument here can be boiled down to this. Yes, the trial court erred. The trial court erred badly, but the trial court was really trying to do the best it could, so affirm the trial court's decision. That is not appropriate. Plaintiff is conceding that the trial court violated the law, that the trial court considered allegations that were improper to consider, that the trial court based its decision to deny Ms. Kahn. The trial court erred, and explicitly, on allegations that had not been set forth in the termination notice, and that was improper. But because the trial court was trying to do the right thing, that its decision should be upheld. And that is wrong. The law matters. The rules matter. And it matters that Ms. King was surprised at the hearing on her motion to vacate by allegations that she had received no advance notice of. Plaintiff's counsel also makes the point that there are many thousands of eviction actions that are filed every year in Chicago, and that 90 percent of them are resolved through agreed orders, and if this court allows agreed orders to be vacated, the whole system will grind to a halt. Plaintiff wants this court to believe that it must sacrifice justice for efficiency, and that is not true. It's a false choice. You can have both. In this case, it would have taken Eileen Kahn or the trial court less than 10 seconds to say, do you understand that this order means that your landlord can evict you even if you pay all the rent demanded plus court costs? That's all that needs to be done in these cases to ensure that unrepresented litigants in forcible cases understand the material terms of the orders that they are signing. In this case, it is clear that Ms. King did not. When Eileen Kahn told her that she could request a one-week continuance to get an attorney, Ms. King thought that wasn't necessary because she thought she had already negotiated an agreement that would allow her to preserve her tenancy. Nothing that was stated at the hearing on the motion to vacate contradicts Ms. King's sworn assertion that she did not understand the order's material terms. The trial court accepted that assertion, and the trial court should therefore have granted her motion to vacate the agreed order. Thank you, counsel. Thank you. All right. Well, the court appreciates the excellent arguments presented both orally and in the briefs by the appellant and the appellee, and it's a very interesting case, and we will take it under Thank you very much.